**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION**

| | | |
|---|---|---|
| DEMETRIUS JAMES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV422-296 |
| | ) | |
| PROFESSIONAL CONTRACT | ) | |
| SERVICES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Defendant Professional Contract Services, Inc. ("PCSI"), moves for an Order compelling Plaintiff Demetrius James "to respond fully to Defendant's Request for Production of Documents." Doc. 56 at 1. It also seeks sanctions under Federal Rule of Civil Procedure 37(b)(2)(A), up to and including dismissal of Plaintiff's Complaint. *Id.* James responded, doc. 57, PCSI replied, doc. 58, and James sur-replied, doc. 59. The Motion is ripe for resolution.

## Background

James' Complaint alleges PCSI discriminated against him and retaliated against him in violation of Title VII of the Civil Rights Act of 1991 and the Americans with Disabilities Act of 1990, culminating in its

termination of his employment.  *See* doc. 1 at 2-8.  James, who suffers from schizoaffective disorder, chronic post-traumatic stress disorder (PTSD), and major depression, alleges PCSI employed him as a "floor technician at the Winn Army Community Hospital and associated outbuildings at Fort Stewart, Georgia," and knew of his alleged disabilities.  *Id.* at 2-3.  James alleges a co-worker sexually assaulted him at work.  *Id.* at 3.  After James informed his supervisor of the assault, the co-worker was moved to a different part of the hospital, but the co-worker was eventually allowed back into James' work area where he again harassed James.  *Id.* at 3.  James then reported the assault to Fort Stewart military police.  *Id.*  That same day, James alleges the PCSI "human resources department, through an employee named Donna, accused [him] of fabricating his complaint of sexual assault. . . ."  *Id.*  The company investigated the sexual assault complaint but found "insufficient evidence to substantiate" it.  *Id.* at 4.

James alleges a day after the investigation concluded, the Army held a mandatory training for PCSI employees about the Army's Sexual Harassment/Assault Response and Prevention (SHARP) program.  Doc. 1 at 4.  During the SHARP meeting a PCSI supervisor told James to sit

at the front of the room, causing him "unbearable embarrassment and humiliation." *Id.* He left the meeting and injured his hand in the process. *Id.* He claims he was instructed to sit at the front of the presentation in retaliation for the sexual assault complaint, to embarrass James for "being a man complaining about a sexual assault by another man," and to discriminate against James because of his disabilities. *Id.* at 5.

James contends PCSI "created a permanent hostile workplace . . . that lasted from July 10, 2020 to June 3, 2022, resulting in him feeling intimidated, violated, and discriminated against." Doc. 1 at 5. He claims a PCSI human resources employee filed a Disciplinary Action Report against him, ostensibly for leaving the SHARP meeting early, but James believes it was further retaliation for the sexual harassment complaint. *Id.* He claims PCSI management "continued to discriminate and retaliate against [him] for filing a sexual assault complaint by falsely writing him up for various policy infractions which would not have resulted in write ups for non-disabled employees or employees who had not complained about sexual harassment." *Id.* He claims the policy infractions were pretextual. *Id.* James was ultimately terminated on June 3, 2022. *Id.* at 5-6.

James filed his Complaint within 90 days of receipt of a Right to Sue letter from the Equal Employment Opportunity Commission (EEOC). *See* doc. 1 at 6. However, because James' Charge of Discrimination related to his termination, as compared to his prior Charge of Discrimination related to alleged discrimination filed before his termination, remained pending before the EEOC when James filed his Complaint, the Court stayed these proceedings pending the EEOC's conclusion of its investigation into his charge related to his termination. Doc. 33.

Before the stay, PCSI served its First Set of Interrogatories and First Request for Production of Documents on James. Doc. 56 at 2-3; *see also* doc. 56-1 (Discovery Requests). PCSI's Motion recounts its efforts to obtain responses to its Discovery Requests. Doc. 56 at 2-3. Eventually, after several extensions, several missed deadlines, and a direction from the Court, *see* doc. 56-3 at 2-10; doc. 22 (ordering James to respond to the outstanding Interrogatories and Requests for Production of Documents), James responded, *see* doc. 56-3 at 11-28 (James' initial discovery responses). PCSI identified what it believed were deficiencies in the responses, *id.* at 30-32, doc. 56-4 at 2-15, and James provided some

supplemental responses, doc. 56-4 at 17-21.  Shortly thereafter the case was stayed pending the EEOC's investigation.  *See* doc. 33.  No discovery was exchanged during the stay.  Doc. 56 at 3.

After the EEOC concluded its investigation, the Court directed the parties to confer and file a joint status report.  Doc. 46.  During that conferral process, PCSI identified additional deficient discovery responses.  Doc. 56 at 4.  Ultimately, in response to additional communication from PCSI, James produced six new videos, two videos he had previously produced, three screenshots containing two text message threads, and one email.  *Id.*  Since Defendant contended James still owed additional discovery responses, it requested authorization to file a motion to compel, which the Court granted.  Doc. 47 at 2-4; doc. 54 at 2.  The Court lifted the stay, entered an amended Scheduling Order, and set a deadline by which PCSI should file its discovery motion.  *See* doc. 54.  The present Motion to Compel was timely filed.  *See* doc. 56.

## Legal Standard

Motions to compel are governed by the rules of discovery, which "strongly favor full discovery whenever possible."  *Farnsworth v. Procter & Gamble Co.*, 758 F.2d 1545, 1547 (11th Cir.1985).  The Rules instruct

that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . ." Fed. R. Civ. P. 26(b)(1).  District courts have broad discretion to manage discovery to ensure that cases move to "a reasonably and timely conclusion" with as minimal a "waste of judicial and private resources" as possible.  *Perez v. Miami-Dade County,* 297 F.3d 1255, 1263 (11th Cir. 2002) (internal citations and quotations omitted).  To this end, discovery is expected to be accomplished voluntarily with minimal judicial intervention.  *See Hunter's Ridge Golf Co. v. Georgia-Pacific Corp.*, 233 F.R.D. 678, 680 (M.D. Fla. 2006) (reminding parties that "[t]he overall purpose of discovery under the Federal Rules is to require the disclosure of all relevant information so that the ultimate resolution of disputed issues in any civil action may be based on a full and accurate understanding of the true facts, and therefore embody a fair and just result.").

While Defendant, as the moving party, has the "burden of showing the information is relevant," *Haley v. Delta Airlines, Inc.*, 2023 WL 2125995, at *2 (N.D. Ga. Jan. 20, 2023) (citing *Mann v. Se. Railcar, Inc.*, 2018 WL 11374881, at *5 (M.D. Ga. Oct. 26, 2018)), the Plaintiff, as the party resisting discovery, "must show specifically how the objected-to

request is unreasonable or otherwise unduly burdensome," *Brannies v. Internet ROI, Inc.*, 67 F. Supp. 3d 1360, 1362 (S.D. Ga. 2014) (internal quotation and citation omitted). *See also Colony Ins. Co. v. All Cities Enters., Inc.*, 2019 WL 5850548, at *3 (M.D. Ga. June 11, 2019) ("Although the party resisting discovery must show why discovery should be denied, 'the moving party has the burden of showing the information is relevant and necessary.'" (quoting *Williams v. Art Inst.*, 2006 WL 3694649, at *3 (N.D. Ga. Sept. 1, 2006))); *Daniel Def., Inc. v. Remington Arms Co., LLC*, 2015 WL 6142883, at * 2 (S.D. Ga. Oct. 19, 2015) ("Those resisting discovery must show specifically how the objected-to request is unreasonable or otherwise unduly burdensome." (cites and quotes omitted)).

Furthermore, "claims and defenses determine discovery's scope," and "evidence is relevant if it has any tendency to make the existence of any fact or consequence more or less probable than it would be without the evidence." *Daniel Defense, Inc.*, 2015 WL 6142883, at *2 (internal quotation marks and citations omitted). However, " '[r]elevancy' under Rule 26(b)(1) is construed broadly, allowing for the discovery of any evidence  'reasonably calculated to lead to the discovery of admissible

evidence.'" *Gates v. Travelers Com. Ins. Co.*, 2012 WL 6186415, at *2 (M.D. Fla. Dec. 12, 2012) (citing *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)); *see also* Fed. R. Civ. P. 26(b) ("Information within this scope of discovery need not be admissible in evidence to be discoverable."); *Panola Land Buyers Ass'n v. Shuman*, 762 F.2d 1550, 1559 (11th Cir. 1985) ("Further, Rule 26 provides that the proper scope of discovery is not limited to information admissible at trial, but can also include information 'reasonably calculated to lead to the discovery of admissible evidence.'" (citation omitted)).

## Analysis

In its Motion to Compel, PCSI identifies four specific requests at issue, doc. 56 at 7-15, which the Court will address in turn.

**Request No. 12.** Please produce documents sufficient to identify the amounts, dates of payment, and sources of all income received by Plaintiff since June 1, 2022 (e.g., W-2 forms, wage statements, SSDI statements, unemployment benefits statements, etc.).

Defendant explains it seeks "documents relating to income Plaintiff earned and received since Plaintiff's employment with Defendant ended." Doc. 56 at 7. Plaintiff's original discovery responses disclosed that he was employed by "Good Will" from June 22, 2022 through October 7, 2022, earning $13 per hour and working anywhere from 25 to 40 hours per

week. Doc. 56-3 at 19. He did not produce any documents responsive to Request No. 12 but appeared to indicate he was searching for responsive documents. *Id.* at 13. Therefore, in a detailed letter sent about a week later, Defendant followed up requesting that he supplement his production with the requested documents. Doc. 56-4 at 7. In response to that letter, Plaintiff stated only that he did not understand the request. *Id.* at 20. Plaintiff also revealed that at some point he began working for "SNF." *Id.* at 18-19.

Defendant's Motion to Compel states that Plaintiff has still not responded to Request 12. Doc. 56 at 7. In response to Defendant's Motion to Compel, Plaintiff states only that he "will be getting all [his] work history forms from the unemployment office thanks." Doc. 57 at 1. He subsequently sent an email identifying Target and "Elon Technologies" as additional employers, but apparently has not produced any of the requested documentation. Doc. 58-1 at 2.

Plaintiff is seeking damages including back pay, front pay, compensatory and punitive damages, and attorneys' fees and costs. Doc. 1 at 1. Among other remedies, plaintiffs who are successful in asserting claims of employment discrimination are entitled to "back pay . . . or any

other equitable relief as the court deems appropriate." 42 U.S.C. § 2000e-5(g)(1); *see also* 42 U.S.C. § 12117(a) (adopting § 2000e-5's enforcement mechanisms as those for the ADA); *Lathem v. Dep't of Children & Youth Servs.*, 172 F.3d 786, 794 (11th Cir. 1999) ("Successful Title VII claimants ... are presumptively entitled to back pay."). However, to be eligible for a back pay award, a claimant must mitigate his damages, and the Defendant has the burden of proving that a claimant has failed to mitigate his damages. *E.E.O.C. v. Joe's Stone Crab, Inc.*, 15 F. Supp. 2d 1364, 1378 (S.D. Fla. 1998). Therefore, as Defendant points out, doc. 56 at 8, "sources of income [Plaintiff] earned subsequent to employment with Defendant is relevant to the issue of mitigation of damages and a possible award of back pay." *E.E.O.C. v. Nordstrom, Inc.*, 2008 WL 5070145, at *3 (S.D. Fla. Nov. 24, 2008).

Defendant has clearly articulated a theory of relevancy for the requested documents, and Plaintiff has not met his burden of demonstrating that the request is unreasonable or unduly burdensome. The Defendant's Motion to Compel Plaintiff to respond fully to Request No. 12 is, therefore, **GRANTED**. Doc. 56, in part. James is **ORDERED** to produce all documents responsive to Request No. 12 within 30 days of

the date of this Order.  The Request asks for "documents sufficient to identify the amounts, dates of payment, and sources of all income received by Plaintiff since June 1, 2022," which encompasses any employer, *i.e.*, Good Will, SNF, Target, and Elon Technologies, that James has had since June 1, 2022.

**Request No. 14.** Please produce a completed and signed copy of the enclosed Authorization for Disclosure of Protected Health Information (Not Including Psycho-therapy Notes) and the enclosed Authorization for Disclosure of Protected Health Information (Psychotherapy Notes Only).

Defendant seeks signed HIPAA-compliant medical records release authorizations from Plaintiff because Plaintiff has not produced his medical records directly.  Doc. 56 at 9-10.  Although Plaintiff indicated that he would sign the forms, *see, e.g.*, doc. 56-5 at 2 ("the doctor's paperwork that y'all need me to sign I will sign them . . . ."), Defendant contends that, as of the date the Motion to Compel was filed, he had not yet provided signed copies of the HIPAA authorization forms, doc. 56 at 10.  In response to the Motion to Compel, Plaintiff states that he "signed and gave [his] health release form defense wanted [him] to sign to the courts. . . ."  Doc. 57 at 1.  A review of the docket shows that Plaintiff is correct.  While he perhaps did not produce the signed forms to Defendant in the way contemplated by the Federal Rules of Civil Procedure, it does

appear that Plaintiff signed the forms and filed them with the Court as an attachment to a discovery-related Motion.  *See* doc. 51-1 at 2-5; *see also* doc. 54 at 3 (acknowledging that Plaintiff's Motion "also appears to include documents that may be responsive to discovery requests propounded by Defendant.").  Therefore, the Motion to Compel the signed forms is **DENIED AS MOOT**.  Doc. 56, in part.

**Request No. 23.** Please produce all phone records and text messages relevant to Plaintiff's claims in this lawsuit, Defendant's stated defenses, and/or the facts as alleged in the Complaint.

Defendant explains that, while Plaintiff has produced some responsive documents, including "incomplete snippets of text messages," the production is "wholly insufficient."  Doc. 56 at 11.  In response, Plaintiff contends "text messages have been turned into to [sic] the courts as well."  Doc. 57 at 1.  However, he then makes the contradictory argument that if the Defendant wants additional text messages between him and a third party, "Miss Tanya," Defendant can "get her text messages."  *Id.* at 2.  That is not how the discovery process works.  *See* Fed. R. Civ. P. 34.  Defendant served Plaintiff with a request to produce documents, Plaintiff did not lodge any objection and has produced what appears to be only a sampling of responsive text messages.  *See* docs. 56-

6, 56-7 & 56-8 at 2-4.  A sample is not sufficient.  The Defendant's Motion to Compel the remaining records and text messages is, therefore, **GRANTED**.  Doc. 56, in part.  Plaintiff is **ORDERED** to produce to Defendant all phone records and text messages relevant to his claims in this lawsuit within 30 days of the date of this Order.

**Request No. 28.** Please produce any and all documents constituting or evidencing any communication you have had with UFCW Local 1996 relevant to Plaintiff's claims in this lawsuit, Defendant's stated defenses, and/or the facts as alleged in the Complaint.

Defendant seeks copies of communications between James and his union, UFCW Local 1996, explaining that James "filed grievances with the union relating to various disciplinary write-ups and, more importantly, Plaintiff's termination, all of which are at issue in this litigation."  Doc. 56 at 13-14.  In response, Plaintiff asserts he feels he has "a right not to give confidentiality text messages between [him] and his union to Professional Contract Service Inc. because it has nothing to do with [him] being fired on June 3rd, 2022. . . ."  Doc. 57 at 1.  The Court construes this as an argument that the communications are privileged in some way, along with a challenge to the relevancy of the requested documents.

Plaintiff has not identified any authority to justify his belief that his communications with his union representatives are privileged. *See* doc. 57 at 1. The party claiming a privilege has the burden of proving its applicability. *Bridgewater v. Carnival Corp.*, 286 F.R.D. 636, 638-39 (S.D. Fla. 2011). Federal courts have consistently recognized the well-settled proposition that "the burden is on [the] party claiming the protection of a privilege to establish those facts that are the essential elements of the privileged relationship." *CSX Transp. Inc. v. Admiral Ins. Co.*, 1995 WL 855421, at *1 (M.D. Fla. July 20, 1995) (quoting *Bowne of New York City, Inc. v. AmBase Corp.*, 150 F.R.D. 465, 470 (S.D.N.Y. 1993)). "A failure of proof as to any element causes the claim of privilege to fail." *Bridgewater*, 286 F.R.D. at 639 (quoting *North Carolina Elec. Membership Corp. v. Carolina Power & Light Co.*, 110 F.R.D. 511, 515 (M.D.N.C. 1986)). Plaintiff's asserted belief that the documents are "confidential" does not protect them from production. Additionally, if Plaintiff wishes to designate any document as confidential before producing it to Defendant he may do so in accordance with the governing Protective Order. *See* doc. 23.

Plaintiff also suggests the requested communications are irrelevant to this lawsuit.  However, Defendant has met its burden of showing the relevancy—at least for discovery purposes—of the requested documents. According to Defendant, Plaintiff filed grievances with his union relating to his termination from PCSI.  Doc. 58 at 4.  Additionally, Defendant points to Plaintiff's own testimony in a separate state court proceeding where he admits he sent text messages to a union representative about PCSI and its employees.  *See* doc. 56 at 13 (citing doc. 56-9 at 12-14, 24). In the face of a request for relevant communications, Plaintiff has not articulated why the request is unreasonable or overly burdensome.  The Defendant's Motion to Compel the communications is, therefore, **GRANTED**.  Doc. 56, in part.  Plaintiff is **ORDERED** to produce documents responsive to Request No. 28 within 30 days from the date of this Order.

## Plaintiff's Continued Deposition

Defendant has indicated it wishes to reopen and continue Plaintiff's deposition to address the documents at issue in its Motion to Compel. *See, e.g.*, doc. 67 at 3; doc. 70 at 1.  Because the Court had directed Plaintiff to produce additional documents, it will also afford Defendant

an opportunity to reconvene Plaintiff's deposition and extend the civil motions deadline. Defendant is **DIRECTED** to reconvene Plaintiff's deposition no later than January 17, 2025. The Court also, therefore, *sua sponte* **EXTENDS** the remaining deadlines. *See* Fed. R. Civ. P. 16(b)(4). The parties' Joint Status Report is due January 31, 2025.[1] The last day for filing all civil motions, including *Daubert* motions but excluding motions *in limine*, is **EXTENDED** to February 14, 2025.

## Defendant's Request for Sanctions

Defendant asks the Court to impose sanctions against Plaintiff for his failure to timely and completely respond to Defendant's discovery requests. Doc. 56 at 15. It seeks either its reasonable attorneys' fees and costs incurred in preparing its Motion to Compel, or, alternatively, dismissal of Plaintiff's claims with prejudice. *Id.*; *see also id.* at 6-7.

*Pro se* litigants must comply with procedural rules and are "subject to the Federal Rules of Civil Procedure, including sanctions for misconduct and for failure to comply with court orders." *Maus v. Ennis*,

---

[1] The Court notes that the parties each submitted a unilateral status report prior to the existing deadline of November 18, 2024. *See* docs. 73 & 74. James has also filed a "response" to Defendant's unilateral report. Doc. 75. The parties are **DIRECTED** to submit a *joint* report, utilizing the form for use in Judge Baker's cases available on the Court's website, by the newly extended deadline.

513 F. App'x 872, 878 (11th Cir. 2013) (citing *Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989)); *see also Albra v. Advan, Inc.*, 490 F.3d 826, 829 (11th Cir. 2007) ("[W]e nevertheless have required [*pro se* defendants] to conform to procedural rules."). Thus, if a *pro se* litigant fails to comply with a discovery order, the litigant is subject to sanctions under Rule 37(b).   Pursuant to Rule 37(b), this Court may impose sanctions, such as striking pleadings, dismissing causes of action in whole or in part, or issuing a default judgment against a disobedient party for failing to comply with discovery orders.   Fed. R. Civ. P. 37(b)(2)(A).  Additionally, Rule 37 mandates that, if a motion to compel is granted, "the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(A).  However, "the court must not order this payment if . . . circumstances make an award of expenses unjust." *Id.*

Although district courts have "broad discretion to fashion appropriate sanctions for the violation of discovery order," it is not unbridled. *U.S. v. Certain Real Property Located at Route 1, Bryant, Ala.*,

126 F.3d 1314, 1317 (11th Cir. 1997); *see also Malautea v. Suzuki Motor Co.*, 987 F.2d 1536, 1542 (11th Cir. 1993).  Dismissing a cause of action or entering a default judgment is considered an "extreme" sanction. *Navarro v. Cohan*, 856 F.2d 141, 142 (11th Cir. 1988); *Telectron, Inc. v. Overhead Door Corp.*, 116 F.R.D. 107, 129 (S.D. Fla. 1987).  Before a court can dismiss a complaint as a sanction, the court must make the following findings: (1) the disobedient party acted willfully or in bad faith; (2) the party requesting discovery was prejudiced as a result; and (3) lesser sanctions would not sufficiently punish or ensure compliance with court orders.  *Telectron, Inc.*, 116 F.R.D. at 131; *Costa v. Datapro, Inc.*, 2011 WL 7318760, at *6 (S.D. Fla. Aug. 5, 2011);.

In this case, at this point, the Court does not find that dismissal is appropriate.  While Mr. James has not fully complied with his discovery obligations, he has produced documents and responded to Defendant's requests, at least partially.  While his *pro se* status does not excuse him from compliance with the Federal Rules of Civil Procedure, the Court does find that his attempts at compliance were in good faith.  Additionally, for the same reasons, the Court finds that an award of attorneys' fees and costs would be unjust.  **However, Plaintiff is**

**warned that failure to abide by the directions in this Order will subject him to sanctions.**  He must carefully read this Order and comply with the Court's instructions.  To ensure the Court is kept apprised of the Plaintiff's compliance, Defendant is **DIRECTED** to submit a Notice within 45 days of the date of this Order notifying the Court of the status of Plaintiff's compliance with his obligations as set forth in this Order.  If Plaintiff does not comply timely, Defendant may renew its request for sanctions, up to and including dismissal of Plaintiff's Complaint.

### <u>Plaintiff's Request to Compel Documents</u>

Buried in his response to Defendant's Motion to Compel, Plaintiff asks the Court to "compel" a "complaint that was given to Ms Carolyn Bennett that made her say she removed [him] from the contract."  Doc. 57 at 1.  Defendants contend this request is moot because they responded to Plaintiff's informal request for documents.  Doc. 58 at 5; *see also* doc. 58-1 at 7 (Certificate of Service for Responses).  Plaintiff spends much of his sur-reply vigorously dispute PCSI's version of the events underlying his claims, *see* doc. 59, but this discovery dispute is not the appropriate time for the parties to present their respective cases.  However, he also

indicates that he has requested a document, a "complaint" made against him during his employment, that Defendant has not yet produced.  *Id.* at 5; *see also* doc. 73 at 1-2 ("I still have not received any documentation on the complaint that Ms. Carolyn Bennett said she received, which went to the EEO Office on Fort Stewart Army Base about me.  I have been asking the defense for this documentation several times . . . .").

The Court recognizes that there may be an ongoing discovery dispute between the parties related to the "complaint" received by Ms. Carolyn Bennett, but the dispute is not yet ripe for any determination by the Court.  All parties who wish to file a discovery motion, including motions filed pursuant to Federal Rule of Civil Procedure 37, must first confer with the opposing party in good faith, and, if they are still unable to resolve the dispute, must request a telephone conference with the undersigned.  *See* doc. 2 at 6.  The parties were notified of these procedures at the inception of this case.  *See id.*  Although the Court has held informal conferences with the parties in the past, Mr. James has not yet brought this particular dispute to the Court for an attempt to resolve it informally.  *See generally* docket.  Additionally, James' request to "compel" the production of the "complaint," which is included in his

response to Defendant's Motion to Compel, does not meet the procedural requirements of Federal Rule of Civil Procedure 37, which requires a party seeking an order compelling discovery to "include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a)(1).

Plaintiff's request to compel is premature. Particularly here, given the Defendant's belief that it has produced the requested documents, *see* doc. 58 at 5, a good faith conferral could prove successful. Therefore, if Plaintiff believes documents exist which he has requested and are in the Defendant's control that it has not yet produced, he must first contact Defendant's lawyer, identify the request at issue, and identify the documents he contends are missing from the Defendant's production. If, after that conversation, he is still not satisfied with the Defendant's response, he may request a conference with the undersigned. The parties are **DIRECTED** to confer within 14 days of the date of this Order.

## Conclusion

Defendant's Motion to Compel is **GRANTED IN PART** and **DENIED AS MOOT IN PART**. Doc. 56. Within 30 days of the date of

this Order, Plaintiff is **ORDERED** to produce all documents in his

possession, custody, or control, responsive to the following requests:

**Request No. 12.** Please produce documents sufficient to identify the amounts, dates of payment, and sources of all income received by Plaintiff since June 1, 2022 (e.g., W-2 forms, wage statements, SSDI statements, unemployment benefits statements, etc.).

**Request No. 23.** Please produce all phone records and text messages relevant to Plaintiff's claims in this lawsuit, Defendant's stated defenses, and/or the facts as alleged in the Complaint.

**Request No. 28.** Please produce any and all documents constituting or evidencing any communication you have had with UFCW Local 1996 relevant to Plaintiff's claims in this lawsuit, Defendant's stated defenses, and/or the facts as alleged in the Complaint.

Defendant is **DIRECTED** to file a Notice within 45 days of the date of

this Order updating the Court on the status of Plaintiff's compliance,

renewing its request for sanctions if it believes Plaintiff has failed to

comply with the instructions in this Order.

Additionally, Defendant is **DIRECTED** to reconvene Plaintiff's

deposition no later than January 17, 2025.  The parties' Joint Status

Report is due January 31, 2025, and they must submit it *jointly*, using

the appropriate form.  The last day for filing all civil motions, including

Daubert motions but excluding motions *in limine*, is **EXTENDED** to

February 14, 2025.

Finally, if Plaintiff intends to pursue a motion to compel production of the "complaint that was given to Ms[.] Carolyn Bennett," doc. 57 at 1, Plaintiff is **DIRECTED** to confer with Defendant's lawyer within 14 days from the date of this Order to discuss, in good faith, his belief that Defendant has failed to produce documents. If the parties are unable to resolve the dispute, Plaintiff is **DIRECTED** to request an informal discovery dispute conference, pursuant to the undersigned's Standard Procedures, by no later than 30 days from the date of this Order.

**SO ORDERED**, this 21st day of November, 2024.

_____
CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA