## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF GEORGIA
## SAVANNAH DIVISION

| | | |
|---|---|---|
| DEMETRIUS JAMES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV422-296 |
| | ) | |
| PROFESSIONAL CONTRACT | ) | |
| SERVICES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Plaintiff Demetrius James, who was previously represented by counsel but is now proceeding *pro se*, alleges his prior employer, Professional Contract Services, Inc. ("PCSI"), intentionally discriminated against him and retaliated against him in violation of the Civil Rights Act and the Americans with Disabilities Act. Doc. 1 at 6-7. PCSI moves for Summary Judgment on all of Plaintiff's claims. Doc. 88. Plaintiff filed several documents that appear to be, at least in part, responses to the Motion. Docs. 91, 93, 94 & 95. Defendant filed its Reply in support of its Motion, doc. 98, and Plaintiff filed two separate documents that appear to be sur-replies in opposition to Defendant's Motion, *see* docs. 99 & 100. Defendants have filed a "Notice of Objection" to Plaintiff's

multiple sur-replies, doc. 103, which the Court addresses below. Meanwhile, Plaintiff filed his own "Summary Judgment," *see* doc. 96, to which Defendant responded, doc. 101, and Plaintiff replied, doc. 102. Plaintiff has also filed a document which the Clerk docketed as a "Notice of Voluntary Dismissal." Doc. 80. These matters are all ripe for disposition. *See* doc. 105.

## I.    Plaintiff's "Notice of Voluntary Dismissal"

The Court must first address Plaintiff's submission docketed as a "Notice of Voluntary Dismissal." Doc. 80. Although it contains a confusing request to "dismiss this case due to the evidence the defense has provided," it also includes a request that someone "honor" Plaintiff with "$600,000 or more for the pain and suffering of [his] family." *Id.* at 1. Therefore, while the Clerk construed the filing as a request for Plaintiff to voluntarily dismiss his claims, the substance of the letter makes the purpose of the filing unclear.

When a plaintiff moves to voluntarily dismiss an action, the motion is governed by Federal Rule of Civil Procedure 41(a). *See* Fed. R. Civ. P. 41(a)(1)-(2). Plaintiff's submission does not invoke any authority, much less specify under which part of Rule 41(a) he may be attempting to

proceed. *See* doc. 80. Rule 41(a)(1) allows a plaintiff to dismiss an action without a court order by filing a notice of dismissal before the opposing party files an answer or motion for summary judgment, or by filing a stipulation of dismissal signed by all parties who have appeared. Fed. R. Civ. P. 41(a)(1)(A)(i)-(ii). Here, Defendant filed an Answer, doc. 4, and only Plaintiff signed the request for dismissal, doc. 80 at 1. Therefore, Rule 41(a)(1) is inapplicable. That leaves Rule 41(a)(2), which provides, in relevant part, "an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." Fed. R. Civ. P. 41(a)(2). Given Plaintiff's request for "dismissal" appears to be contingent on his receipt of "$600,000 or more" and the lifting of his "bar" from Fort Stewart, the terms are not proper and his request for dismissal, construed as a request under Rule 41(a)(2), should be **DENIED**. Doc. 80.

## II. Plaintiff's Summary Judgment Filing

The purpose of Plaintiff's filing titled "Summary judgment" is similarly vague. *See* doc. 96. As Defendant correct points out, the submission "is untimely and fails to comply with the requirements of Rule 56 and articulates no legal arguments or a separate statement of facts upon which summary judgment may be granted in Plaintiff's favor."

Doc. 101 at 3. Plaintiff's filing is untimely and completely deficient under the applicable rules, and his *pro se* status does not excuse his failure to comply with those rules. *See Moton v. Cowart*, 631 F.3d 1337, 1340 n. 2 (11th Cir. 2011).

Motions for Summary Judgment were due February 14, 2025, *see* doc. 76 at 22, and James' "Summary judgment" was filed March 6, 2025, *see* doc. 96. He did not seek leave to file an untimely motion or even acknowledge its untimeliness. *Id.*; *see also generally* docket. "District courts enjoy broad discretion in deciding how best to manage the cases before them, and that discretion extends to whether to consider untimely motions for summary judgment." *Enwonwu v. Fulton-DeKalb Hosp. Auth.*, 286 F. App'x 586, 595 (11th Cir. 2008) (citing *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1366 (11th Cir. 1997), and *Matia v. Carpet Transport, Inc.*, 888 F.2d 118, 119 (11th Cir. 1989)) (internal quotation marks omitted). Further, a court does not abuse its discretion by refusing to accept an out-of-time filing when there is no affirmative showing of excusable neglect under Federal Rule of Civil Procedure 6(b). *Mosley v. MeriStar Mgmt. Co., LLC*, 137 F. App'x 248, 250 (11th Cir. 2005) (citing *Useden v. Acker*, 947 F.2d 1563, 1571–72 (11th Cir. 1991));

4

*see also Dedge v. Kendrick*, 849 F.2d 1398, 1398 (11th Cir. 1988) (upholding the district court's denial of defendant's motion for summary judgment based on untimeliness).    Plaintiff's Motion for Summary Judgment was untimely filed, and he has made no showing as to why the Court should accept it.    It should be denied on that basis alone.    *Gallien v. Binkley*, 2008 WL 4916394, at *2 (S.D. Ga. Nov. 14, 2008) ("A motion that is untimely pursuant to a duly entered . . . scheduling order may be denied on that ground alone."); *see also T.H.E. Ins. Co. v. Cochran Motor Speedway*, 2010 WL 5351183, at *2 (M.D. Ga. Dec. 21, 2010) (declining to consider an untimely cross motion for summary judgment) (citing *Impreglon, Inc. v. Newco Enters., Inc.*, 508 F. Supp. 2d 1222, 1228 (N.D. Ga. 2007)).

Even if the Court were to consider the untimely submission, it should still be denied because Plaintiff failed to include any of the requirements of a properly supported motion under Federal Rule of Civil Procedure 56 or provide a separate statement of facts pursuant to the Court's Local Rules.    *See generally* doc. 96.    Local Rule 56.1 provides "Upon any motion for summary judgment . . ., in addition to the brief, there shall be annexed to the motion a separate, short, and concise

statement of the material facts as to which it is contended there exists no genuine dispute[.]" Plaintiff's Motion for Summary Judgment contains a single page of argument, but does not cite to any legal authority or any portion of the record, or, importantly, include a separate statement of facts. Doc. 96. Courts frequently deny similarly deficient Motions. *See Brandon v. Lockheed Martin Aeronautical Sys.*, 393 F. Supp. 2d 1341, 1348 (N.D. Ga. 2005) (holding pro se litigant to the procedural requirements of submitting a separate statement of material facts); *Daker v. Owens*, 2021 WL 1606052, at *2 (S.D. Ga. Feb. 9, 2021), *report and recommendation adopted*, 2021 WL 983136 (S.D. Ga. Mar. 16, 2021) (denying a pro se plaintiff's motion for summary judgment because his motion did not comply with this Court's Local Rules); *Jackson v. Red Hills Oral & Facial Surgery, P.A.*, 2020 WL 1081700, at *2 (N.D. Fla. Jan. 13, 2020), *adopted*, 2020 WL 1078760 (N.D. Fla. Mar. 6, 2020) ("Plaintiff's failure to comply with [the Court's Local Rules] is itself a sufficient reason to deny Plaintiff's motion for partial summary judgment."); *Kemp v. Ga. State Univ. Admissions*, 2008 WL 11320118, at *1 n. 2 (N.D. Ga. June 16, 2008) (striking a pro se litigant's motion for summary judgment because it did not have a separate statement of

material facts, which was required by the court's local rules). Plaintiff's

Motion is untimely and materially deficient, and it should be **DENIED**.

Doc. 96.

## III.  Defendant's Motion for Summary Judgment

Because Plaintiff's claims are not properly dismissed on his

voluntary motion, and Plaintiff's Motion for Summary Judgment is

procedurally and substantively insufficient, the Court proceeds to

consider the Defendant's Motion for Summary Judgment.

## <u>Legal Standard</u>

Summary judgment "shall" be granted if "the movant shows that

there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is

"material" if it "might affect the outcome of the suit under the governing

law." *FindWhat Inv'r Grp. v. FindWhat.com*, 658 F.3d 1282, 1307 (11th

Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

(1986)). A dispute is "genuine" if the "evidence is such that a reasonable

jury could return a verdict for the nonmoving party." *Id.*

The moving party bears the summary judgment burden.  *See*

*Williamson Oil Co. v. Philip Morris USA*, 346 F.3d 1287, 1298 (11th Cir.

2003). When the nonmoving party would have the burden of proof at trial, the moving party may discharge his burden by showing that the record lacks evidence to support the nonmoving party's case or that the nonmoving party would be unable to prove his case at trial. *See Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)). If the moving party discharges this burden, the burden shifts to the nonmovant to go beyond the pleadings and present affirmative evidence to show that a genuine issue of fact does exist. *See Anderson*, 477 U.S. at 257.

In determining whether a summary judgment motion should be granted, a court must view the record and all reasonable inferences that can be drawn from the record in the light most favorable to the nonmoving party. *Peek-A-Boo Lounge of Bradenton, Inc. v. Manatee County*, 630 F.3d 1346, 1353 (11th Cir. 2011) (citing *Rodriguez v. Sec'y for Dep't of Corr.*, 508 F.3d 611, 616 (11th Cir. 2007)). However, "facts must be viewed in the light most favorable to the non-moving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting Fed. R. Civ. P. 56(c)). Even still, the existence of material disputed facts will not defeat summary judgment when the

plaintiff "fails to make a showing sufficient to establish the existence of an element essential to [plaintiff's] case, and on which [plaintiff] will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322.

## Summary Judgment Record

As an initial matter, the Court must first identify the record to be considered on summary judgment. The facts are predominately taken from PCSI's Statement of Material Facts. Doc. 88-1. Although Plaintiff has inundated the Court with documents and materials since PCSI filed its Motion for Summary Judgment and supporting materials, *see* docs. 91, 93, 94, 95, 99, & 100, none of those filings directly controverts each of PCSI's Statements of Material Fact. *See generally id.*; *see also* doc. 98 at 3-4 (noting Plaintiff's attempts to deny PCSI's Statement of Material Facts are deficient because they are generalized denials without citation to any pertinent portions of the record).

Federal Rule of Civil Procedure 56(c) requires "[a] party asserting that a fact cannot be or is genuinely disputed [to] support the assertion by . . . citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A). Furthermore, pursuant to Rule 56(e), "[i]f a party fails to properly support an assertion of fact or fails to properly address another

party's assertion of facts as required by Rule 56(c)," the Court may "consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e); *see also* S.D. Ga. L. Civ. R. 56.1 ("All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by a statement served by the opposing party.") "[G]eneralized denials, provided without citations to particular parts of materials in the record, are insufficient to satisfy [Rule 56(c)]." *Allen v. United States*, 2018 WL 934895, at *1 n. 2 (S.D. Ga. Feb. 16, 2018). Indeed, "[w]here the party responding to a summary judgment motion does not directly refute a material fact set forth in the movant's Statement of Material Facts with specific citations to evidence, or otherwise fails to state a valid objection to the material fact pursuant to [Local Rules], such fact is deemed admitted by the respondent." *Futch v. Chatham Cnty. Det. Ctr.*, 2012 WL 1557336, at *2 (S.D. Ga. May 2, 2012) (quoting *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1302 (11th Cir. 2009)); *see also Encompass Home & Auto Ins. Co. v. Stevens Hale & Assocs.*, 2022 WL 3330150, at *1 n. 1 (S.D. Ga. Aug. 11, 2022). Therefore, most of PCSI's Statements of Material Fact are deemed admitted.

While Plaintiff's multiple filings are insufficient under the governing rules, where it appears that Plaintiff has attempted to directly respond to a statement, the Court will address whether the fact has been appropriately controverted and is, therefore, in dispute.[1]  In doing so, however, the Court is mindful of the consideration to be afforded to Plaintiff's submissions.  The Eleventh Circuit has explained:

> At the summary judgment stage, parties may submit traditional affidavits sworn under oath before a notary (or another oath-taker) affixed with the notary seal. Affidavits must: (1) be made on personal knowledge, (2) set forth facts that would be admissible in evidence, and (3) show that the affiant is competent to testify on the relevant matter.  Fed. R. Civ. P. 56(c)(4).  Unsworn statements may not be considered by a district court in evaluating a motion for summary judgment. *Carr v. Tatangelo*, 338 F.3d 1259, 1273 n. 26 (11th Cir. 2003).  An unsworn statement is incompetent to raise a fact issue precluding summary judgment.  *See id.*; *United States ex rel. Doe v. Heart Sol., PC*, 923 F.3d 308, 315-16 (3d Cir. 2019) (concluding that an unsworn statement that was not given under the penalty of perjury was "incompetent summary judgment evidence").

*Roy v. Ivy*, 53 F.4th 1338, 1347 (11th Cir. 2022); *see also McCaskill v. Ray*, 279 F. App'x 913, 915 (11th Cir. 2008) (unsworn statements, even

---

[1] PCSI objects to the Court's consideration of Plaintiff's multiple sur-replies.  Doc. 103 at 2.  Because the Court will consider all of Plaintiff's filings to determine whether any of them contain a response sufficient to controvert Plaintiff's Statements of Material Facts, the objection is overruled.  Doc. 103; *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed pro se is 'to be liberally construed[.]'" (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

from *pro se* parties, should not be considered in determining the propriety of summary judgment).[2]

## **Factual Background**

PCSI is nonprofit organization that employs people with disabilities. Doc. 88-1 at 1. It provides custodial, warehousing, food service, and maintenance services to state and federal governmental institutions through contracts procured under a program called "AbilityOne." *Id.* (citing doc. 88-5). Through one of those contracts PCSI provides healthcare cleaning services for Winn Army Community Hospital at Fort Stewart, Georgia ("Winn"). *Id.* at 4 (citing doc. 88-8). The contract between PCSI and the United States Army allows the Army's contracting officer or representative to ask PCSI to remove an employee "when it is determined that the [employee's] behavior is contrary to the public interest, inconsistent with the best interests of security, or is identified as a potential threat to the health, safety, security, general wellbeing or operational mission of the facility and its population." *Id.* at 4-5. Additionally, PCSI has a collective bargaining

---

[2] There is a statutory exception to this rule under 28 U.S.C. § 1746, which permits unsworn declarations to substitute for sworn affidavits or sworn declarations, *Roy*, 53 F.4th at 1348, but none of Plaintiff's submissions meet the requirements of this statutory exception, *see generally* docs. 91, 93, 94, 95, 99, & 100.

agreement with the United Food and Commercial Workers Union Local 1996 ("the Union"), and under the terms of that agreement the Union agrees to cooperate with PCSI "in all matters required by the U.S. Army," and that PCSI's compliance with the Army's requirements "shall not constitute a breach" of the agreement. *Id.* at 5.

PCSI hired Plaintiff on April 19, 2018, as a housekeeper at Winn. Doc. 88-1 at 5. During his employment, Plaintiff reported two incidents with his co-workers. In May 2020, he reported concerns about Steffania Stowbridge, who he alleged was spreading rumors about him and his wife. Doc. 88-1 at 6. PCSI's Human Resources Manager Donna Josey investigated his complaint and interviewed Plaintiff and other employees. *Id.* After the conclusion of the investigation, where Plaintiff's allegations were determined to be unsubstantiated, Plaintiff requested a transfer which was approved. *Id.* He then moved to a separate building at Winn. *Id.*

In July 2020, Plaintiff had an encounter with another co-worker, Donovan Mullins, after they consumed alcohol together on the jobsite. Doc. 88-1 at 7-8. Mullins "smacked" Plaintiff on his buttocks. *Id.* at 8; *see also* doc. 88-3 at 17-20 (Plaintiff's deposition testimony about the

incident). Plaintiff contends Mullins' touch was sexual, and that Mullins continued to harass him by standing near him and deliberately interfering with his work.  Doc. 88-1 at 8-9.  Immediately after the incident Plaintiff reported it to a co-worker, Calvin Gibson, and five days after the incident Plaintiff reported it to his direct supervisor, Alton Miller.  *Id.*  Miller directed the two men to stay away from one another and assigned them to different areas.  *Id.*  Two days later Mullins entered Plaintiff's designated work area, and Plaintiff reported it to Miller.  *Id.*  That same day Plaintiff reported Mullins and the touching incident to the military police, *id.* at 9, and Human Resources Manager Donna Josey launched an HR investigation into Plaintiff's claims, *id.* at 10.  Josey interviewed several people and eventually closed her investigation on July 27, 2020, because she "could not substantiate Plaintiff's claims that Mullins had touched his buttocks."  *Id.*  She also instructed Plaintiff's supervisors to keep Plaintiff and Mullins from working near each other, and Mullins was reassigned to a new location with different hours.  *Id.*

On July 28, 2020, the Army conducted its annual sexual harassment training program, which PCSI employees working at Fort Stewart were required to attend.  Doc. 88-1 at 11.  Plaintiff arrived late

and PCSI's housekeeper supervisor Erick Chandler directed him to sit in an available seat near the front of the auditorium. *Id.* When Plaintiff realized Mullins was sitting near him he left the program and returned with food and drink. *Id.* Chandler told him to throw the food away because eating was not allowed in the auditorium. *Id.* Plaintiff eventually left the auditorium, went outside, and punched a wall. *Id.* He was issued a disciplinary report. *Id.* at 12. He filed a grievance with the Union over the disciplinary report  and the report was eventually rescinded. *Id.* Additionally, even though Plaintiff was unable to identify any flaws with Josey's initial investigation into the Mullins incident, *see* doc. 88-3 at 40-41, shortly after receiving the disciplinary report, Plaintiff complained about the outcome and a new investigation was conducted, doc. 88-1 at 12. On August 31, 2020, the follow-up investigation was concluded which also found the claims were unsubstantiated. *Id.*

From January 2021 through his termination in June 2022, Plaintiff received additional disciplinary reports. Doc. 88-1 at 12-15. He received one for violating PCSI's attendance policy, one for violating a mask mandate, one for violating the chain of command policy, and one for again violating the attendance policy and for insubordination. *Id.* Although he

15

received several disciplinary reports, they did not result in his termination. Doc. 88-5 at 5. Instead, on June 2, 2022, PCSI employee Tanya Newmarch received notice from the Army's contracting officer representative, Carolyn Bennett, that she was going to remove Plaintiff from the Army's contract with PCSI related to a complaint lodged by a government employee working on Fort Stewart. *Id.* at 4-5. Newmarch also received a copy of the complaint. *Id.* at 8-9. On June 3, 2022, there was an official request from the Army contracting officer requesting Plaintiff be removed. *Id.* at 5; doc. 88-8 at 2, 7. Because there were no other available positions in Georgia for Plaintiff, PCSI terminated his employment. Doc. 88-1 at 16. At the time of his termination only one disciplinary report remained pending. *Id.*

Plaintiff's filings in response to PCSI's Summary Judgment predominately focus on the validity of the Army's request for his removal from the contract. *See generally* doc. 91; doc. 93 at 1-3; doc. 94 at 4; doc. 95 at 1 ("I assert that my termination on June 3, 2022, was unjust . . . The claims were falsely connected to Ms. Carolyn Bennet. My termination was made permanent solely due to the actions of the defense contacting Brett Daniels."). However, his speculative assertions are

insufficient to contradict the record evidence that the United States Army representative sent, in writing, a request to PCSI to remove Plaintiff from the contract because of his "inappropriate behavior" that was "a potential threat to the health, safety, security, and general wellbeing of those that are required to interact with him or be within his vicinity." Doc. 88-4 at 139. Plaintiff's reliance on a recorded conversation of unclear provenance with a "Mr. Wright," wherein "Mr. Wright" – otherwise unidentified—provides his opinion about PCSI's conduct, does not contradict authenticated documentation provided by PCSI that the United States Army requested his removal. *See* doc. 91 at 1. The remainder of Plaintiff's submissions contain similarly speculative, unsworn allegations and refer to unauthenticated recordings of dubious relevance and do not serve to controvert the material facts identified by PCSI. *See* docs. 91, 93, 94, 95, 99, 100; *see also Chapman v. Wilkie*, 2020 WL 5077743, at *1 (S.D. Ga. Aug. 27, 2020) ("[W]here a fact asserted by Defendant in its [Statement of Undisputed Material Facts] is supported by the evidentiary materials submitted in support and Plaintiff fails to rebut the supported fact with [his] own *admissible* evidence, the fact is undisputed."). Plaintiff does not point to any properly sworn testimony,

either via deposition, affidavit, or declaration, that properly disputes PCSI's properly supported record of his termination, or any other material fact identified by PCSI.

## Administrative Procedural History

On March 15, 2022, Plaintiff submitted a Charge of Discrimination against PCSI with the Equal Employment Opportunity Commission ("EEOC"). Doc. 88-9 at 2, 4-5. An amended version of the Charge notes that it was "timely received and perfected on May 26, 2021." Doc. 88-9 at 6-7. In it, Plaintiff alleged he was sexually assaulted by a male employee on June 10, 2020, and that "Ms. Judy (Last name unknown), Human Resources who is Caucasian, did not take my complaint seriously unlike female employees." He contended he was discriminated against because of his race and sex, and retaliated against for opposing unlawful employment practices in violation of Title VII of the Civil Rights Act, and his disability, in violation of the ADA. *Id.* at 7.

On October 11, 2022, he filed another Charge of Discrimination with the EEOC asserting he engaged in protected activity when he filed the prior EEOC charge, and was then terminated in a way he believes was retaliatory. Doc. 88-9 at 9. On March 1, 2023, he filed an Amended

Charge of Discrimination making the same allegations, but adding that he was terminated after returning to work from a medical leave of absence, and was retaliated and discriminated against in violation of Title VII and the ADA. *Id.* at 11-12.

Plaintiff filed this lawsuit on December 14, 2022, alleging he was sexually assaulted by Mullins, that PCSI created a hostile work environment by allowing Mullins back into his work area and forcing him to sit near Mullins during the sexual assault training program, that an HR representative filed a disciplinary report against him in retaliation for his sexual harassment complaint and because he was disabled, that PCSI discriminated and retaliated against him for filing the complaint by writing him up for policy infractions, and that PCSI unlawfully terminated him in furtherance of its discrimination, retaliation, and hostile workplace against him, all in violation of Title VII of the Civil Rights Act and the ADA. *See generally* doc. 1.

## Analysis

PCSI first argues that Plaintiff's claims of sexual harassment, hostile work environment, sex discrimination, and retaliation prior to November 27, 2020, are time-barred. Doc. 88 at 14-16. Prior to filing

suit for claims alleging violations of the ADA or Title VII, "a plaintiff first must file a charge of discrimination with the EEOC." *Gregory v. Ga. Dep't of Human Resources*, 355 F.3d 1277, 1279 (11th Cir. 2004) (Title VII); *Maynard v. Pneumatic Prods. Corp.*, 256 F.3d 1259, 1262 (11th Cir. 2001) (per curiam) (ADA).  This exhaustion requirement seeks to ensure that the EEOC has "the first opportunity to investigate the alleged discriminatory practices to permit it to perform its role in obtaining voluntary compliance and promoting conciliation efforts." *Gregory*, 355 F.3d at 1279 (citation and quotation omitted).  Georgia is a "non-deferral state," so a "plaintiff must file a charge of discrimination with the EEOC within 180 days after the date of the alleged discriminatory act." *Coley v. Shaw Indus., Inc.*, 2021 WL 4429818, at *1 n. 1 (11th Cir. Sept. 21, 2021) (citing 29 C.F.R. § 1626.7(a); *Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1317 (11th Cir. 2001)); *see also Beavers v. Am. Cast Iron Pipe Co.*, 975 F.2d 792, 796 (11th Cir. 1992) (citing 42 U.S.C. § 2000e-5(e)(1)).

Because Plaintiff's Amended Charge of Discrimination from March 15, 2022 identifies that the charge was "timely received and perfected on May 26, 2021," doc. 88-9 at 6-7, PCSI asserts November 27, 2020 (180 days before May 26, 2021), was the cutoff date for timely claims.  Doc. 88

at 14-15.  They identify the allegations of sexual harassment related to the alleged touching by Mullins on July 10, 2020, hostile work environment because of Mullins' continued presence between July 10, 2020 and July 17, 2020, and the sexual harassment training on July 28, 2020 as time-barred.  *Id.* at 15.  Plaintiff never responds to this argument.  *See generally* docs. 91, 93, 94, & 95; *see also* doc. 98 at 2 (noting Plaintiff's failure to respond to Defendant's untimeliness argument).

PCSI is correct that the allegations of sexual harassment and hostile work environment pre-date November 27, 2020, and are, therefore, untimely.  *See, e.g.*, *Beavers*, 975 F.2d at 796.  The incident with Mullins occurred on July 10, 2020, and the claims of a hostile work environment caused by Mullins' proximity to Plaintiff culminated in the sexual assault training on July 28, 2020.  Similarly, Plaintiff's assertion of gender discrimination based on what he contends was an unfair investigation into his sexual assault allegation is untimely.  The first investigation concluded on July 27, 2020, and the follow-up investigation concluded on August 31, 2020.  *See* doc. 88-1 at 10, 12.  Any claim for gender discrimination based on the investigation into his complaints of sexual harassment is likewise untimely.  Therefore, PCSI's Motion for

Summary Judgment should be **GRANTED** as to Plaintiff's claims of sexual harassment, hostile work environment, and gender discrimination, based on their untimeliness. Doc. 88, in part.[3]

Next, PCSI challenges Plaintiff's retaliation claims. To begin, any claim for retaliation based on the issuance of disciplinary reports prior to November 27, 2020 is untimely, for reasons explained above. Specifically, any claim based on the August 5, 2020 disciplinary report identified in Plaintiff's Complaint, *see* doc. 1 at 5, is time barred. More importantly, PCSI is correct that Plaintiff cannot sustain his retaliation claims under the ADA or Title VII based on the issuance of disciplinary reports or his termination. Doc. 88 at 16-19; *see also* doc. 1 at 5-6 (alleging the disciplinary reports and termination were retaliatory). "A plaintiff asserting a retaliation claim under Title VII must show that: (1) he engaged in statutorily protected activity; (2) he suffered a materially adverse action; and (3) there was a causal connection between the

---

[3] Because these claims are fatally flawed because of their untimeliness, the Court need not reach PCSI's alternative argument that they also fail on the merits. *See* doc. 88 at 19-25. Even if the Court were to reach that argument, though, it does appear that Plaintiff has failed to establish his claims of sexual harassment, hostile work environment, gender discrimination, or disability discrimination, and that PCSI is entitled to judgment on those claims as a matter of law. *Id.* Therefore, summary judgment on those claims would be appropriate, untimeliness notwithstanding.

protected activity and the adverse action." *Howard v. Walgreen Co.*, 605 F.3d 1239, 1244 (11th Cir. 2010) (citing *Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1277 (11th Cir.2008)).  Courts assess ADA retaliation claims under this same framework. *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1287 (11th Cir. 1997).

Once the plaintiff establishes this prima facie case, the burden shifts to the defendant to offer a legitimate, nondiscriminatory reason for its employment decision. *Johnson v. Miami-Dade Cnty.*, 948 F.3d 1318, 1325 (11th Cir. 2020).  If the defendant offers a legitimate, nondiscriminatory reason for its employment decision, the burden shifts back to the plaintiff to establish that the reason offered by the defendant was not the real basis for the decision, but a pretext. *Id.*  Where the employer's proffered reason "is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it." *Tolar v. Bradley Arant Boult Commings, LLP*, 997 F.3d 1280, 1298 (11th Cir. 2021) (internal quotation marks and citation omitted).  To establish pretext at the summary judgment stage,

> ". . . a plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them

unworthy of credence.  A reason is not pretext for retaliation unless it is shown both that the reason was false, and that retaliation was the real reason."  [*Gogel v. Kia Motors Mfg. of Ga., Inc.*, 967 F.3d 1121, 1136 (11th Cir. 2020)] (citations and quotation marks omitted and alterations accepted) (emphasis in original).  In short, "in determining whether the plaintiff has met her burden to show pretext, we remain mindful that it is the plaintiff's burden to provide evidence from which one could reasonably conclude that but for her alleged protected act, [the] employer would not have [taken the adverse action]." *Id.*  Further, "[p]rovided that the proffered reason is one that might motivate a reasonable employer . . . the employee cannot succeed by simply quarreling with the wisdom of that reason."  *Chapman v. AI Transp.*, 229 F.3d 1012, 1030 (11th Cir. 2000) (en banc).

*Id.*

PCSI first argues that Plaintiff cannot sustain a retaliation claim based on the issuance of disciplinary reports because his disciplinary reports are not materially adverse employment actions.  A materially adverse action is one that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  *Burlington N. and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal quotation marks and citation omitted).  The test for adversity is objective; the Court may not consider a plaintiff's subjective feelings.  *See Doe v. Dekalb Cty. Sch. Dist.*, 145 F.3d 1441, 1448-49 (11th Cir. 1998).  "The reprimand of an employee does not constitute an adverse employment action when the employee suffers no tangible harm as a result."  *Summerlin v. M&H*

24

*Valve Co.*, 167 F. App'x 93, 97 (11th Cir. 2006) (citing *Pennington v. City of Huntsville*, 261 F.3d 1262, 1267 (11th Cir. 2001)); *see also Johnson*, 948 F.3d at 1326-27 (negative monthly employment evaluations cannot serve as the basis for a Title VII retaliation suit). There is nothing in the record to suggest Plaintiff's disciplinary reports were materially adverse. Instead, at the time of his termination, all but one of the reports "had fallen off pursuant to the Company's disciplinary policy." Doc. 88-1 at 16. Therefore, any retaliation claim based on the issuance of the disciplinary reports must fail. PCSI's motion for summary judgment on this basis should be **GRANTED**. Doc. 88, in part.[4]

Finally, PCSI argues that it has put forward a legitimate, non-discriminatory, non-retaliatory reason for Plaintiff's termination, and Plaintiff has failed to rebut that reason with any evidence of pretext. Doc. 88 at 18-19. The uncontroverted evidence in the record, discussed above, is that the United States Army, pursuant to its contract with PCSI, requested that Plaintiff be removed from its contract and no longer

---

[4] Even if the disciplinary reports could be considered materially adverse actions in the context of a retaliation claim, the uncontroverted record put forth by PCSI demonstrates legitimate, nondiscriminatory reasons for each of the reports. *See* doc. 88-1 at 12-15. Plaintiff has no competent evidence in the record to rebut the proffered reasons. *See generally* docs. 91, 93, 94, 95, 99, & 100. Plaintiff has simply not borne his burden of showing pretext. *See Tolar*, 997 F.3d at 1298.

permitted to work at Fort Stewart. *See, e.g.*, doc. 88-1 at 15-16; doc. 88-8 at 2; doc. 88-4 at 139. Plaintiff conceded that the Army emailed PCSI to have him removed from the contract. Doc. 88-3 at 71-72. His attempt to rebut that evidence is speculative, at best. His belief that someone from PCSI asked the Army representative to request his removal is based on speculation and conjecture, and his own subjective belief that some nefarious act of PCSI resulted in the email. *See, e.g.*, doc. 91 at 1. His musings about what might have happened, based on his own speculation, is not sufficient to meet his burden of showing pretext. Therefore, all of Plaintiff's claims stemming from his termination, including any claim of disability discrimination under the ADA or retaliation, necessarily fail. *See Johnson*, 948 F.3d at 1325; *Akridge v. Alfa Ins. Cos.*, 93 F.4th 1181, 1195-97 (11th Cir. 2024) ("In sum, even if [Plaintiff] established a prima facie case using comparators, record evidence does not create a factual issue that [Defendant's] non-discriminatory reasons for filing her were both false and a pretext for disability discrimination."). Therefore, PCSI's Motion for Summary Judgment on Plaintiff's claims related to his termination should be **GRANTED**. Doc. 88, in part.

## IV.  Conclusion

For the foregoing reasons, all of Plaintiff's claims fail as a matter of law, and PCSI's Motion for Summary Judgment should be **GRANTED**. Doc. 88.  Additionally, Plaintiff's request for dismissal, construed as a request under Rule 41(a)(2), should be **DENIED**, doc. 80, and his Motion for Summary Judgment should be **DENIED**, doc. 96.  If the District Judge adopts this recommendation, PCSI's request for dismissal based on Plaintiff's various alleged discovery violations should be **DISMISSED AS MOOT**.  Doc. 79.

This Report and Recommendation (R&R) is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3.  Within 14 days of service, any party may file written objections to the R&R with the Court and serve a copy on all parties.  The document should be captioned "Objections to Magistrate Judge's Report and Recommendations."

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge.  The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are

advised that failure to timely file objections will result in the waiver of rights on appeal.  11th Cir. R. 3-1; *see Symonette v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. United States*, 612 F. App'x 542, 545 (11th Cir. 2015).

**SO REPORTED AND RECOMMENDED**, this 5th day of August, 2025.

_____
CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA